**DIGITAL COMMUNICATIONS ASSOCIATES, INC., Plaintiff,**

v.

**SOFTKLONE DISTRIBUTING CORPORATION, a Florida Corporation, and Foretec Development Corporation, a Florida Corporation, Defendants.**

Civ. A. No. 86–128–A.

United States District Court, N.D. Georgia, Atlanta Division.

March 31, 1987.

Stanley F. Birch, Jr., Atlanta, Ga., for plaintiff.

**452**

Frank G. Smith, III, Atlanta, Ga., for defendants.

## ORDER

O'KELLEY, District Judge.

The above-styled action is before the court for a consolidated hearing/trial on the plaintiff's motion for a preliminary injunction and request for a permanent injunction. Fed.R.Civ.P. 65(a)(2). The plaintiff, in its amended complaint, has alleged copyright infringement, federal and common law unfair competition, and violations of its common law right of publicity. The defendants, in their amended answer, have counterclaimed for declaratory judgment and have alleged common law unfair competition and violations of the federal antitrust laws. By stipulation of the parties, the plaintiff's claims of unfair competition and violation of the right to privacy and the defendants' counterclaims, as well as all issues of damages, have been deferred. The only issue presently before the court for consideration and upon which evidence has been presented is the question of the defendants' liability for copyright infringement. Based upon the evidence presented at the hearing/trial and otherwise contained in the record and file, the court makes the following findings of fact and conclusions of law. Fed.R.Civ.P. 52.

### Findings of Fact

While the legal conclusions to be drawn from the facts are hotly in dispute, the basic facts underlying the claim of copyright infringement are not. The original plaintiff in this action, Microstuff, Inc., a Georgia corporation, was organized in 1979. During the early 1980's, it developed and marketed the Crosstalk asynchroneous data communication system. Following its initial development, the Crosstalk system has undergone several revisions. In 1983, Microstuff began marketing Crosstalk XVI, an updated version of its earlier Crosstalk system. The purpose of the Crosstalk system is to enable the user's computer to "communicate" with other computers. Thus, a user with a microcomputer can access information and data stored in other microcomputers or in a remote mainframe computer. Although Microstuff has had many competitors producing similar data communication programs, it's Crosstalk system have been extremely successful in the marketplace.

One of the elements of the Crosstalk XVI system that has enabled it to receive such widespread support is its distinctively designed "status screen" screen display also called its "main menu." (A copy of which is appended to this order as exhibit A.) The "status screen" screen display, which appears immediately following the "boot-up" or sign-on screen display, contains in its upper portion an arrangement and grouping of parameter/command terms under various descriptive headings. Next to each of the parameter/command terms are values, either numerical or verbal. The value of each parameter/command reflects the value at which the program is operating and is either selected by the user or by the computer program ("default settings"), e.g., the number 300 next to the "SPeed" parameter/command indicates the byte or baud rate at which the computer program is communicating with other computers. Two letters of each parameter/command term are capitalized and highlighted. By typing those two letters, the user can effectuate that specific command.

The lower portion of the status screen display, excluding the bottom line, called the "window," can display a wide variety of text including anything the user might wish to cause to appear there. Upon typing in a "HElp" command, the user can call up into the "window" a list of all the Crosstalk XVI parameter/command terms. The list of terms is arranged in four alphabetical groupings. Because of the size of the list, all the terms cannot be displayed in the window at one time. By pressing the "enter" key on the keyboard when the first portion of the terms is shown in the window, the remainder of the terms will appear.

The bottom line of the status screen is the "command" line. On this line, the user can enter "commands" or instructions to

the computer to change the values at which it operates. After entering a command changing the operation of the program, the change is then reflected by a change in the value next to the corresponding parameter/command term in the upper portion of the screen. For example, if the user wishes to change the byte or baud rate (speed) of the program to 1200, he can type and enter the two letter symbol for the byte or baud rate command along with the rate he desires, e.g. "SP 1200," the computer will then operate at a 1200 byte or baud rate, and the number "1200" will appear in the upper portion of the status screen next to the parameter/command term "SPeed."

In October, 1985, Microstuff obtained copyright registrations on the Crosstalk XVI user manual (version 3.6), copyright number TX–1–657–201, and the Crosstalk XVI computer program (version 3.6), copyright number TX–1–657–208. In December, 1985, Microstuff applied for copyright registration on the Crosstalk XVI "Main Menu" (version 3.6) (status screen). In support of its application, Microstuff deposited a printout of the status screen. After some delay, the Copyright Office registered the status screen as a "compilation of program terms," copyright number TX–1–719–301. On February 6, 1986, a second printout of the status screen was approved for registration, copyright number TX–1–735–829. Microstuff then placed copyright notices in the computer program's source code, on the box in which the computer program diskette is packaged, on the "boot-up" or sign-on screen displayed when the program is turned on, and on every page of the user manual.

After obtaining a commercially available copy of the Crosstalk XVI program, the defendant ForeTec Development Corporation, a Florida corporation, decided in the summer of 1985 to develop a "clone" of Crosstalk XVI system. ForeTec employed legal counsel to assist it in determining which parts of the Crosstalk system were copyrightable. ForeTec's legal counsel advised ForeTec that the source and object codes of the Crosstalk XVI computer program and the Crosstalk XVI user manual were copyrightable, but that use of a similar or identical screen display to the Crosstalk XVI status screen would not constitute copyright infringement because the status screen was not copyrightable. ForeTec's Crosstalk XVI clone, called "Mirror," was completed and marketed in December, 1985. The Mirror program performs the same functions as the Crosstalk XVI program (with a few minor differences) and utilizes a status screen that is the source of the instant claim of infringement. (A copy of which is appended to this order as exhibit B.)

In August, 1985, ForeTec created a wholly owned subsidiary, the defendant Softklone Distributing Corporation, a Florida corporation, for the purpose of marketing and distributing "clone" computer programs such as the Mirror program. In October, 1986, Microstuff was purchased by Digital Communications Associates, Inc., a Georgia corporation. Digital Communications Associates, Inc. has been substituted as the plaintiff in this action.

## CONCLUSIONS OF LAW

■ The two essential elements necessary to prove a claim of copyright infringement are ownership of a copyright by the plaintiff and copying by the defendant. *Whelan, Inc. v. Jaslow Dental Laboratory, Inc.*, 797 F.2d 1222, 1231 (3rd Cir. 1986). In order to establish ownership of a copyright, the plaintiff must establish (1) originality in the author of the copyrighted work; (2) copyrightability of the subject matter of the work; (3) proper citizenship of the author; (4) compliance with the applicable statutory formalities, e.g., reasonable notice of copyright affixed to work; and (5) (if the plaintiff is not the author) a transfer of rights or other relationship between the author and the plaintiff so as to constitute the plaintiff the valid copyright claimant. 3 *Nimmer on Copyright* ("Nimmer") § 13.01[A] (1986). In the instant action, the defendants' defense has focused on the second and fourth elements of plaintiff's copyright ownership, i.e., that the status screen is not copyrightable subject matter and that, even if it is, the failure of the plaintiff to place a copyright notice on the

status screen in combination with its continued failure to use reasonable efforts to cure that omission have resulted in the placement of the status screen in the "public domain" and the forfeiture of its copyright protection.

## COPYRIGHT PROTECTION FOR THE STATUS SCREEN

The plaintiff obtained three copyrights covering (1) the Crosstalk XVI user manual, (2) the Crosstalk XVI computer program, and (3) the Crosstalk XVI "Main Menu" (status screen). The plaintiff has alleged that the defendants' copying of the Crosstalk XVI "Main Menu" (status screen) is an infringement of both of the latter two copyrights.

### 1. *General Copyright Law:*

The right of copyright is a creature of federal statute, originally enacted in 1790, and is based upon the constitution, Article I, § 8, cl. 8. *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 432 (4th Cir.1986). Present statutory authority for the right of copyright is embodied in the Copyright Act of 1976, as amended in 1980, codified at 17 U.S.C. § 101 *et seq.* The 1976 Act, as amended, provides in pertinent part:

§ 101. As used in this title, the following terms and their variant forms mean the following:

"Audiovisual works" are works that consist of a series of related images which are intrinsically intended to be shown by the use of machines or devices such as projectors, viewers, or electronic equipment, together with accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied.

. . . .

A "computer program" is a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result.

. . . .

"Literary works" are works, other than audio visual works, expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they are embodied.

. . . .

§ 102(a). Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced or otherwise communicated, either directly or with the aid of a machine or device, works of authorship include the following categories:

(1) literary works;

. . . .

(6) motion pictures and other audiovisual works. . . .

(b). In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

. . . .

§ 106. Subject to sections 107 through 118, the owner of a copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyright work in copies . . .;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies . . . of the copyrighted work to the public by sale. . . .

### 2. *Copyright Protection of the Computer Program:*

It is now well-established under the amended 1976 Act that a computer program is a "work of authorship" and is subject to copyright protection. Under the Act, computer programs are classified as "literary works." *Whelan*, 797 F.2d at 1234. Case law under the Act also clearly establishes that copyright protection extends to both a program's source code, written in conventional human language and symbols, and object code, written in machine readable binary language. *Id.*

(source and object code); *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240 (3rd Cir.1983), *cert. dismissed*, 464 U.S. 1033 (1984) (same).

Courts, however, have struggled to define what other elements of a computer program, literal and/or non-literal, to which a computer program's copyright protection extends. The leading case addressing the extent of such protection is *Whelan, Inc. v. Jaslow Dental Laboratory, Inc.*, 797 F.2d 1222. The Third Circuit Court of Appeals, after noting the general copyright principle that literary works can be infringed even when there is no substantial similarity between the works' literal elements, concluded that the copyright protection of a computer program extends beyond the program's literal source and object codes to its "structure, sequence and organization." *Whelan*, 797 F.2d at 1248 (*citing Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327 (9th Cir.1983); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977); *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49 (2nd Cir.1936); *Nichols v. Universal Pictures Corp.*, 45 F.2d 119 (2nd Cir.1930)). *Cf. SAS Institute, Inc. v. S & H Computer Systems, Inc.*, 605 F.Supp. 816 (M.D.Tenn.1985) (copying of structural and organizational details amounts to infringement).

While finding that copying of a program's screen displays may serve as indirect evidence of copying of a program, the *Whelan* court did not specifically extend a computer program's copyright protection to its screen displays. The *Whelan* court cited approvingly those cases which have found a computer program's screen displays, at least in the context of "video games," to be separately copyrightable as "audiovisual works." 797 F.2d at 1222 (*citing Williams Electronics, Inc. v. Artic International, Inc.*, 685 F.2d 870 (3rd Cir. 1982); *Stern Electronics, Inc. v. Kaufman*, 669 F.2d 852 (2nd Cir.1982); *Midway Mfg. Co. v. Strohon*, 564 F.Supp. 741 (N.D. Ill.1983)). The rational for a separate audiovisual copyright for a screen display is that a computer screen display can be copied by means of a computer program which is not itself a copy of the computer program which generated the screen display which has been copied. *Stern Electronics, Inc. v. Kaufman*, 669 F.2d at 855 ("many different computer programs can produce the same 'results'; whether those results are an analysis of financial records or a sequence of images and sounds"); *Midway Mfg. Co. v. Strohon*, 564 F.Supp. at 749 ("it is quite possible to design a game that would infringe Midway's audiovisual copyright but would use an entirely different computer program").

One court, however, has gone a step further than *Whelan* and has concluded that a computer program's copyright protection extends to its audiovisual screen displays. *Broderbund Software, Inc. v. Unison World, Inc.*, 648 F.Supp. 1127, 1133 (N.D.Cal.1986) ("copyright protection is not limited to the literal aspects of a computer program, but rather ... extends to the overall structure of a program, including its audiovisual displays"). The *Broderbund* court based its conclusion on what this court believes to be an overexpansive and erroneous reading of *Whalen*. The Third Circuit in *Whalen* dealt only with the evidentiary use of the copying of screen displays for the purpose of establishing copying of the underlying computer program. The *Whalen* case did not stand for, as *Broderbund* believed it to, the proposition that screen displays are protected by the computer program's copyright from copying.

■ After careful review of the relevant case law and of the thorough arguments made by counsel, this court concludes that copyright protection of a computer program does not extend to screen displays generated by the program. The court recognizes that there are strong arguments on both sides, but concludes, consistent with those cases finding the audiovisual screen displays of a video game to be separately copyrightable, that screen displays generated by computer programs are not direct "copies" or "reproductions" of the literary or substantive content of the computer programs. This distinction results from the fact that the same screen can be created by

a variety of separate and independent computer programs. It is somewhat illogical to conclude that a screen can be a "copy" of many different programs. Therefore, it is this court's opinion that a computer program's copyright protection does not extend to the program's screen displays and that copying of a program's screen displays, without evidence of copying of the program's source code, object code, sequence, organization or structure, does not state a claim of infringement.

This court expressly rejects any implication in *Broderbund* to the contrary. The court takes note of the conclusion drawn by the Fourth Circuit Court of Appeals in *M. Kramer Mfg. Co.* that a copyright of an audiovisual display, which display is created by a computer program, protects not only the audiovisual screen display from copying, but also protects the underlying computer program to the extent the program embodies the audiovisual display. 783 F.2d at 442. The basis for the court's conclusion in *M. Kramer Mfg. Co.* is its finding that a computer program is a "copy" of the audiovisual screen display and that copies "are protected by a copyright in the original work." 17 U.S.C. §§ 101 and 106(1). The *M. Kramer Mfg. Co.* opinion, when read with this opinion, appears to create an anomoly in that a computer program is considered a "copy" of a screen display but a screen display is not considered a "copy" of a computer program. This apparent anomoly is created because of the unusual nature of computers.

"Copies" are statutorily defined as "material objects ... in which a work is fixed by any method now known or later developed, *and from which the work can be perceived, reproduced, or otherwise communicated,* either directly or with the aid of a machine or device." 17 U.S.C. § 101 (emphasis added). The distinction between programs and screen displays lies in the fact that if one has a fixed computer program, one can, with the aid of a computer, repeatedly produce the same screen display. Thus, a computer program is a copy of a screen display. The converse, however, is not true. If one has a fixed screen

display, one cannot, even with the aid of a machine, repeatedly create the same program (source or object code) as many different programs can create the same screen display. Thus, a computer screen display is not a "copy" of any particular computer program and copyright protection of the computer program will not extend to a screen display such as the plaintiff's status screen. The court, therefore, rejects the plaintiff's contention that the copyright in the Crosstalk XVI computer program has been infringed by the defendants' alleged copying of the Crosstalk XVI status screen. Under the above analysis, it is clear that the plaintiff must establish another basis, other than the computer program, for copyright protection of the status screen.

### 3. *Copyright of the Status Screen:*

The plaintiff has also contended that the defendants' alleged copying of the status screen is an infringement of its valid copyright on the status screen. The plaintiff notes that in January, 1986, it obtained copyright registration on the Crosstalk XVI status screen.

A certificate of copyright registration constitutes prima facie evidence of the validity of a copyright on a work—including the copyrightability of the subject matter of the work and the sufficiency of its copyright notice. 17 U.S.C. § 410(c); 3 *Nimmer* § 12.11[A] and [B]. Thus, where a plaintiff has obtained a copyright registration, the defendant bears the burden of producing evidence which brings into question the copyrightability of the work and the sufficiency of its copyright notice. *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 U.S. 3336, 88 L.Ed.2d 778 (1986); *Williams Electronic,* 685 F.2d 870.

Citing, *Baker v. Selden,* 101 U.S. (11 Otto) 99, 25 L.Ed. 841 (1879), and contending (1) that the status screen's purpose is simply to permit the user to review their parameter settings and (2) that the status screen conveys no information to the use other than the information actually record-

ed on the screen, the defendants urge the court to find that the status screen is not copyrightable because it is a necessary expression of the idea underlying the status screen and/or because it is simply a "blank form."

In *Baker v. Seldin,* the Supreme Court denied copyright protection for original bookkeeping forms appended to several books authored by the plaintiff explaining a new method of double-entry bookkeeping. The plaintiff argued that he had secured the exclusive right to the use of his system of bookkeeping explained in his books because "no one can use the system without using substantially the same ruled lines and headings which he ... appended to his books in illustration of" the system. 101 U.S. at 101. The plaintiff's forms, "by a peculiar arrangement of columns and headings," presented an entire financial operation for several varied periods of time on a single page or on two pages facing one another. *Id.,* at 100.

The Court summarized the question before it in *Baker v. Seldin* to be "whether the exclusive property in a system of bookkeeping can be claimed, under the law of copyright, by means of a book in which that system is explained?" *Id.,* at 101. After noting the distinction between a book and the art, or idea, which the book is intended to illustrate, the Court found that "where the [idea the plaintiff's book] teaches cannot be used without employing the methods and diagrams used to illustrate the book, or such as are similar to them, such methods and diagrams are to be considered as necessary incidents to the art, and given therewith to the public ... for the purpose of practical application." *Id.,* at 103. Without addressing the dissimilarity of the plaintiff's and defendant's forms, the Court apparently found that the plaintiff's forms "must necessarily be used as incident" to the bookkeeping system explained in the plaintiff's and defendant's books and, therefore, not copyrightable. *Id.* at 104. The court concluded its analysis by stating that "blank accountbooks are not the subject of copyright; and that the mere copyright of [the plaintiff's] book did not confer upon him the exclusive right to

make and use account-books, ruled and arranged as designated by him and described and illustrated in said book." *Id.,* at 106.

Courts since *Baker v. Seldin* have interpreted the case to set forth two separate, though related, propositions—(1) ideas, as such, are not copyrightable and, as a corollary, necessary expressions incident to an idea "merge" with that idea and also are not copyrightable (this is the realm of patent, not copyright, protection); and (2) "blank forms" which are designed for recording information and which do not themselves convey information are not copyrightable. The defendants in the instant action argue both that the Crosstalk XVI status screen is a necessary expression of its idea so as to merge its expression with its idea and that the status screen is nothing more than a "blank form" designed to record the program user's choices of parameter values. The court disagrees with both contentions.

### A. *Idea v. Expression:*

As noted by the court in *Whelan,* "[i]t is axiomatic that copyright protects only the expression of ideas and not the ideas themselves." 797 F.2d at 1234. *See Mazer v. Stein,* 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954) ("unlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea—not the idea itself") (citation omitted); 17 U.S.C. § 102(b) (1982) ("In no case does copyright protection for an original work extend to any idea, procedure, process, system, method of operation, concept, principle or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.").

Further, as indicated by the analysis in *Baker v. Seldin,* where an idea has only one "necessary" form of expression, the idea and its expression "merge." *See, e.g., Herbert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F.2d 738 (9th Cir.1971) (idea of jewel-encrusted "bee" pin indistinguishable from expression of that idea; no copyright protection for plaintiff's pin). The rational

behind such a merger rule is sound. If there exists only one expression for an idea, then granting copyright protection with its attendant ease of obtainment and long duration (50 years after the life of the author or 75 years for an "anonymous" work) would unduly prevent use of the idea by society. As noted by the Third Circuit in *Whelan,* "we must remember that the purpose of the copyright law is to create the most efficient *balance between protection (incentive) and dissemination of information* [use], to promote learning, culture, and development." 797 F.2d at 1235 (citations omitted; emphasis added).

The inherent problem with applying the idea (and expression merged with idea) versus expression (copyrightable) distinction to any specific case is defining the underlying "idea" of the copyrighted work. *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d at 1163. In *Whalen,* the Third Circuit concluded that *"the purpose or function of a utilitarian work would be the work's idea."* 797 F.2d at 1236 (citation omitted). Having once determined the "idea" of the copyrighted work, the court then is to determine whether there are various means of achieving the desired purpose. "Where there are various means of achieving the desired purpose, then the particular means chosen is not necessary to the purpose: hence, there is expression [copyrightable], not idea [expression merged with idea]." *Id.* (footnote omitted). *See also M. Kramer Mfg. Co.,* 783 F.2d at 436 ("accepted test" in computer area is: if "there is only one way to express the idea, 'idea' and 'expression' merge and there is no copyrightable material) (citing *Apple Computer Inc. v. Franklin Computer Corp.,* 714 F.2d 1240; *Morrissey v. Procter & Gamble Co.,* 379 F.2d 675 (1st Cir.1967)).

Since the work at issue is the status screen, the court must determine what is the "idea" behind the status screen and then determine whether the expression of the status screen is "necessary" to that "idea." In attempting to define the idea of the status screen, the court is reminded of the analogy used by Judge Higginbotham in *Synercom Technology, Inc. v. Universi-*

*ty Computing Co.,* 462 F.Supp. 1003, 1013 (N.D.Tex.1978).

A hypothetical, oversimplified, may serve to illuminate the idea versus expression controversy. The familiar "figure–H" pattern of an automobile stick is chosen arbitrarily by an auto manufacturer. Several different patterns may be imagined, some more convenient for the driver or easier to manufacture than others, but all representing possible configurations. The pattern chosen is arbitrary, but once chosen, it is the only pattern which will work in a particular model. The pattern (analogous to the computer "format") may be expressed in several different ways: by a prose description in a driver's manual, through a diagram, photograph, or driver training film, or otherwise. Each of these expressions may presumably be protected through copyright. But the copyright protects copying of the particular expressions of the pattern, and does not prohibit another manufacturer from marketing a car using the same pattern. Use of the same pattern might be socially desirable, as it would reduce the retraining of drivers. Likewise, the second manufacturer is free to use its own prose descriptions, photographs, diagrams, or the like, so long as these materials take the form of original expressions of the copied idea....

Thus, "idea" is the process or manner by which the status screen, like the car, operates and the "expression" is the method by which the idea is communicated to the user. As indicated by the evidence presented at trial, the status screen operates by the user typing on the bottom line of the screen two symbols, which correspond to a particular command, usually followed by a value. The computer then affects a change in the operation of the program based upon the particular command and value involved and reflects the changed status of the program on the upper portion of the status screen. As an example, if the user wishes the program to operate on a certain speed, e.g. 1200, the user can type on the bottom line of the

status screen the two symbols "SP" followed by "1200." The computer will then operate at a speed of 1200 and that fact will be reflected by the appearance on the upper portion of the status screen of "1200" next to the term "*SP* eed."

[7, 8] Certain aspects of the example noted above are clearly "ideas" which any other party, including the defendants, could legally copy. The use of a screen to reflect the status of the program is an "idea;" the use of a command driven program is an "idea;" and the typing of two symbols to activate a specific command is an "idea." All of these elements relate to how the computer program receives commands or instructions from the user and how operationally the computer program reflects the results of those commands. Certain aspects of the status screen, however, are unrelated to how the computer program operates and are "expression." The arrangement of the parameter/command terms has no relation to how the computer operates. That is to say, the computer allows for any sequence in the entering of commands, e.g., first entering a "*SP* eed" command and then entering a "*DA* ta" command has the same effect as first entering a "*DA* ta" command and then entering a "*SP* eed" command. Likewise, the highlighting and capitalizing of two specific letters of the parameter/command terms listed on the status screen has no relation to how the status screen functions, i.e., the user need not type in two highlighted, capitalized symbols to effectuate a command.

■ The defendants contend that because the entire status screen is "used" as part of the operation of the program and that because the plaintiff has repeatedly referred to the "uses" of the status screen, the status screen therefore cannot be copyrighted. The defendants read into *Baker v. Seldin* a distinction between works to "be used" and works to "explain." As noted in *Mazer v. Stein*, "nothing in the copyright statute [supports] the argument that the intended use or use in industry of an article eligible for copyright bars or invalidates its registration. We do not read such a limitation into the copyright

law." 347 U.S. at 218, 74 S.Ct. at 371. A work both can be used and can explain; that part of a work which explains, if not necessary to the idea of the work, is copyrightable.

The defendants also rely heavily upon the case of *Synercom* to support their contention that the status screen, like the "input format cards" involved in *Synercom*, is necessary expression of the idea it expresses and therefore is expression merged with idea. 462 F.Supp. 1003. *Synercom* involved the copyrightability of a *sequence* of data entered into a computer. *Id.*, at 1008. The plaintiff in *Synercom* developed a computer program for the structural analysis of buildings. The program operated on data input into it by the user. In order for the program to operate properly, the data, representing numerous variables relating to the building being analyzed, had to be input in a certain sequence. To assist the user in compiling the data in the correct sequence, the plaintiff published and copyrighted a manual explaining the process and "format cards" which mimicked the standard 80 column key-punch cards used for the actual input of the data into the computer. The user was to place the data on the format cards in a sequential order as dictated by the program's need for the data. To assist the user in placing the data in the correct sequence, the format cards had titles and shaded areas delineating the proper columns to place certain data, e.g., the first X number of columns represented a specific piece of data, the next Y number of columns represented another specific piece of data, etc.

The defendant did not copy the format cards, but rather designed a computer program which required the input of data in the exact same sequence as the plaintiff's program. *Id.*, at 1012. Thus, a user could input data accumulated in stores of key-punch cards, called data decks, that had been originally created for use with the plaintiff's program. *Id.*, at 1008. The plaintiff had copyrighted the format cards and contended that the defendant's program infringed the copyright in the "format cards" because the defendant's pro-

gram did no more than translate the expression of the format cards into a computer program. *Id.,* at 1012.

The *Synercom* Court concluded that no infringement occurred because the defendant merely copied the idea of the format cards, i.e., the particular sequence of data. Translated into the instant case, the comparable situation would have occurred had the defendants designed a program which accepted all of the same commands utilized by the plaintiff, e.g., if on the defendants' program the user typed two symbols and a value for the byte or baud rate such as "1200" on the bottom line of a screen display and the speed at which the program communicated would switch to 1200 and somewhere on the screen a number 1200 would appear informing the user of the new speed value. If this had been the situation, then there would have been only an appropriation of the plaintiff's idea and not its expression. The difference between *Synercom* and the instant case is that in *Synercom* the sequence of the data input into the computer is relevant to the functioning of the *Synercom* computer program and the plaintiff only copied this sequence. The *Synercom* defendant did not, however, create format cards with the same headings and shaded areas. In the instant case, the arrangement of the parameters/commands on the status screen and the highlighting and capitalizing of two specific letters of each command have no relationship to the functioning of the status screen or of the computer program underlying the status screen. Unlike the situation in *Synercom*, the defendants here allegedly copied the arrangement, headings, capitalization, and highlighting of the plaintiff's work and presented it to the user as their own work.

As a secondary grounds for denying the plaintiff in *Synercom* any relief, the court found the format cards to be not copyrightable. *Id.,* at 1014. The basis for this alternative holding, however, is somewhat confusing. It appears that the court concluded that the idea of the format cards, i.e., a particular sequence of data, had merged with the expression of the format cards, i.e., the sequence of the format card (the

court apparently did not look at the headings or shadings of the format cards, but only at their sequence and placement of certain data in certain columns). That is, the idea of the sequence of data necessitated a particular expression of that sequence on the format cards. To the court, the format cards evidenced no stylistic creativity above and beyond the sequence of data.

■ In the instant case, however, the arrangement of the status screen involves considerable stylistic creativity and authorship above and beyond the ideas embodied in the status screen. It cannot be said that the idea of the status screen, i.e., using two symbol commands to change the operations of the computer program and reflecting that fact on a screen listing the computer program's parameters/commands with their operative values, could not have been expressed in a large variety of ways. The defendants have never contended that they could not have arranged the parameters/commands in a wide variety of patterns without hampering the operation of their program. The parameters/commands could have been arranged and delineated in an almost infinite number of horizontal and vertical patterns and groupings that would be substantially dissimilar to the arrangement and grouping utilized by the plaintiff. Likewise, the defendants could have used a wide variety of techniques to indicate which symbols the user should type to effectuate a command, e.g., different symbols could have been chosen, or simply highlighting, or capitalizing, or underlining the appropriate symbols, or any combination thereof, or placement the symbols in parenthesis or brackets before or after the parameter/command. The modes of expression chosen by the plaintiff for its status screen are clearly not necessary to the idea of the status screen. Therefore, the plaintiff's mode of expression of the status screen does not merge with the idea of the status screen.

## B. *Forms that Convey Information:*

■ The fact that the arrangement and design of the status screen is expression and not idea does not necessarily establish

that the arrangement and design is copyrightable. The defendants contend that the status screen is a "blank form" within the meaning of *Baker v. Seldin* and the Copyright Office Regulations and, therefore, is not copyrightable. 35 C.F.R. § 202.1(c) ("[b]lank forms, such as time cards, graph paper, account books, diaries, bank checks, score cards, address books, report form, order forms and the like, which are designed for recording information and do not in themselves convey information" are not copyrightable).

As noted by the Eleventh Circuit Court of Appeals, *Baker v. Seldin* and the Copyright Office Regulations stand for the proposition that "blank forms which do not convey information or contain original pictorial expression are not copyrightable." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 971 (11th Cir.1983) (citations omitted). The "litmus seems to be whether the material proffered for copyright undertakes to express." *Synercom*, 462 F.Supp. at 1011 (the Synercom court apparently concluded that the format cards "did indeed *express* ideas" and were copyrightable if "the ideas they express are separable from their expression"). In other words, if the work provides the user information beyond simply indicating where to record data (*Synercom* implies even this alone may be sufficient), then the work is copyrightable.

While the court has reviewed for guidance the cases cited on this issue by the plaintiff and the defendants, *see, e.g., Edwin K. Williams Co. v. Edwin K. Williams Co.–East*, 542 F.2d 1053 (9th Cir. 1976), *cert. denied*, 433 U.S. 908, 97 S.Ct. 2973, 53 L.Ed.2d 1092 (1977) (account book with blank forms and instructions "integrated work" and copyrightable); *M.M. Business Forms Corp. v. Uarco, Inc.*, 472 F.2d 1137 (6th Cir.1973) (charts and forms for use by repairmen not copyrightable); *Continental Casualty Co. v. Beardsley*, 253 F.2d 702 (2nd Cir.), *cert. denied*, 358 U.S. 816, 79 S.Ct. 25, 3 L.Ed.2d 58 (1958) (explanatory language and forms inseparable and copyrightable); *American Code Co. v. Bensinger*, 282 F. 829 (2nd Cir.1922) (code book copyrightable); *Januz Mktg.*

*Communications, Inc. v. Doubleday & Co.*, 569 F.Supp. 76 (S.D.N.Y.1982) (time charts for organizing daily activities not copyrightable); *Norton Printing Co. v. Augustana Hospital*, 155 U.S.P.Q. (BNA) 133 (N.D.Ill.1967) (hospital/laboratory examination forms conveyed information and copyrightable), none of these cases are dispositive and it is clear that the determination of whether a work conveys information must be made on a case-by-case basis.

In a somewhat similar context, the Third Circuit in *Whelan* concluded that a computer program's file structures, which collect and organize information entered by the user, are sufficiently informative to deserve copyright protection. 797 F.2d 1242–43. The *Whelan* court discussed the "blank forms" issue as follows:

> Although some courts have stated that the meaning of *Baker v. Selden* is that blank forms cannot be copyrighted, this circuit, like the majority of courts that have considered the issue, has rejected this position and instead have held that blank forms may be copyrighted *if they are sufficiently innovative that their arrangement of information is itself informative. Apple Computer, Inc.*, 714 F.2d at 1250. *See also Manpower, Inc. v. Temporary Help of Harrisburg, Inc.*, 246 F.Supp. 788 (E.D.Pa.1965) (upholding copyrightability of form for vacation schedules).
>
> This is not to say that *all* blank forms or computer files are copyrightable. *Only those that by their arrangement and organization convey some information can be copyrighted. Cf.* 1 Nimmer at 2–201: "Thus books intended to record the events of baby's first year, or a record of a European trip, or any one of a number of other subjects, may evince considerable originality in suggestions of specific items of information which are to be recorded, and in the arrangement of such items." (footnotes omitted).

*Id.* (footnotes omitted; emphasis added). This court believes that *Whelan* correctly states the applicable law on this issue and disagrees with the defendants' contention that the Eleventh Circuit in *John H. Har-*

*land Co.*, 711 F.2d 966, has indicated otherwise.

After review of the evidence, the court concludes that the status screen, even if found to be a "form," clearly expresses and conveys information and, therefore, is copyrightable. The arrangement of the commands under descriptive parameter headings aids the user in easier understanding of the availability, importance, and functioning of the various commands. Likewise, the highlighting and capitalizing of certain letters of the commands assist the user in knowing which symbols to enter to activate the various commands. While it is true that the status screen alone would be insufficient to completely explain to a novice user either the availability of commands, the meaning of the commands, or the symbols necessary to enter certain commands, this fact is not dispositive. Whether or not an explanatory work is complete for all users is not determinative of whether the work is explanatory in nature. The status screen clearly "undertakes to express." *Synercom*, 462 F.Supp. at 1011.

The basic principle behind denying copyright protection to "blank forms" lies in the concern that providing such protection would give the copyright owner undue protection over the idea underlying the form, i.e., there are often very few methods to express the content of a form such as a calendar or time sheet and one individual could draw up these variations, copyright them, and thus obtain a virtual monopoly on such clearly useful ideas as a record of the days and of one's time and activities. Further, the majority of such forms are simple and require like ingenuity to design, so little incentive (protection) is required to motivate designers, while the use (communication) of the form is very important to society.

Application of this principle to the plaintiff's status screen, which undisputedly required substantial effort to author and which has innumerable possible variations so that its copyrighting would not permit the plaintiff to monopolize its underlying ideas, argues for granting it copyright pro-

tection. Despite defense counsel's arguments of the particular importance of standardization in the computer industry, a argument similar to the one rejected in *Whelan*, 797 F.2d at 1238 ("we are not convinced that progress in computer technology or technique is qualitatively different from progress in other areas of science or the arts"), this court concludes that the proper balance of protection and communication supports the copyrightability of the status screen arrangement and design. By granting the plaintiff a copyright on the arrangement and design of the status screen, the court is not granting the plaintiff control over the ideas of a command driven program, a "status" screen depicting the status of the program's operations, or the use of particular command terms or symbols.

#### C. *Status Screen as a "Compilation":*

Several courts have concluded that in the context of "video games" computer generated screen displays are independently copyrightable as "audiovisual works." *M. Kramer Mfg. Co.*, 783 F.2d 421; *Williams Electronics, Inc.*, 685 F.2d 870; *Stern Electronics, Inc.*, 669 F.2d 852. It is uncertain, however, whether the status screen, a "literary work" if it is written on a piece of paper as opposed to appearing on a computer display screen, should be copyrightable as an "audiovisual work." The 1976 Copyright Act provides that "audiovisual works" are works consisting "of a series of related images." 17 U.S.C. § 101. While the status screen can change its appearance when the values of the parameters/commands are changed or when different lists or textual elements appear in the status screen's "window," the court is of the opinion that the status screen is essentially a "literary work" and is copyrightable as such.

The plaintiff has repeatedly asserted that the status screen is either a "compilation" or a "derivative work" within the meaning of the 1976 Copyright Act. 17 U.S.C. §§ 101 *et seq.* A "compilation" is statutorily defined as "a work formed by the collection and assembling [1] of preexisting materials or [2] of data that are selected,

coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." *Id.* A "derivative work" is statutorily defined as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgement, condensation, or any other form in which a work may be recast, transformed or adapted." *Id.* The 1976 Copyright Act provides that "the subject matter of copyright ... includes compilations and derivative works." *Id.*, § 103.

■ After careful consideration of the evidence, and in light of the preceding analysis, the court concludes that the status screen is not a "derivative work" but is properly considered a "compilation." A "derivative" work is necessarily based upon a preexisting work recast or transformed. As shown by the evidence, the status screen was for the most part designed and arranged prior to the writing of the source code for the computer program and prior to any other specific work it could have been derived from. Arguably, the Crosstalk XVI computer program is a derivative work of the Crosstalk XVI status screen. The court, however, need not address that thorny issue.

In this court's opinion, the status screen is a "compilation" of parameter/command terms. As indicated by the statutory definition, a compilation is the "assembling" of "data" or information "arranged" in such a way as to constitute "an original work of authorship." The status screen fits this definition. The court notes, although it is not dispositive, that the Copyright Office granted the plaintiff a copyright registration on the status screen as a "compilation."

That a work is a compilation of information, such as parameter/command terms, does not "resolve the issue of whether the work is capable of being copyrighted." *Southern Bell Telephone and Telegraph Co. v. Associated Telephone Directory Publishers*, 756 F.2d 801, 810 (11th Cir. 1985). As the defendant notes, most forms, even truly "blank forms" that do not themselves convey information, are compilations of a kind. For a compilation to be copyrightable, it must also meet the requirements of 17 U.S.C. § 102, i.e., that the work be (1) an original work of authorship (2) fixed in a tangible medium from which it (3) can be perceived and (4) not an idea or a necessary expression of an idea. Except for the last of these requirements, which the court has already resolved against the defendants, the defendants have not challenged the status screen's compliance with 17 U.S.C. § 102.

The specific placement, arrangement and design of the parameter/command terms on the status screen is neither arbitrary nor predetermined but, rather, is the result of extensive original human authorship. While some of the choices of the two symbols to represent certain parameter/command terms may not be original, there was some limited evidence that other earlier programs had used the first two letters of a command term, other choices of symbols are clearly original, e.g., "RQ" for the "request" command term (changed by the plaintiff to "RQuest"). The status screen's arrangement and design of the parameter/command terms is fixed in the computer program. *See M. Kramer Mfg. Co.*, 783 F.2d at 437. The arrangement and design of the status screen is perceivable on the screen display. And, as previously noted, the arrangement and design of the status screen is neither the idea nor the necessary expression of the idea of the status screen. Therefore, the status screen, which is a compilation, is copyrightable to the extent of its arrangement and design of parameter/command terms.

### STATUTORY FORMALITIES

The defendants also contend that the plaintiff forfeited any copyright protection this court may determine is applicable to the status screen because the plaintiff failed to place a proper copyright notice on the status screen. Under the 1976 Copyright Act, notice of copyright "shall be affixed to the copies [of the copyrighted work] in such a manner as to give reason-

able notice of the claim of copyright." 17 U.S.C. § 401(c). Omission of such copyright notice places the work in the public domain unless that omission is excused. The omission is excused

(1) if notice has been omitted from no more than a relatively small number of copies or phonorecords distributed to the public; or

(2) registration for the work has been made within five years after the publication without notice, and a reasonable effort is made to add notice to all copies or phonorecords that are distributed to the public in the United States after the omission has been discovered....

17 U.S.C. § 405(a). While no evidence of specific quantities were presented, it appears that considerably more than "a relatively small number" of the Crosstalk XVI programs and status screens were distributed to the public.

The defendants contend that the plaintiff, although it registered the status screen within five years of the publication of the status screen, failed to use reasonable efforts to affix a proper copyright notice on all copies distributed after the registration. The underlying assumption of the defendants' argument is that a copyright notice must be affixed directly on the status screen in order to be proper. The court disagrees with this premise. Placement of a notice is proper if it is such as to apprise anyone seeking to copy the work of the existence of the copyright. If the placement meets this requirement, it is sufficient even if the placement is not in the most obvious or expected location. 2 *Nimmer* § 7.10. Thus, copyright notice placed on the back of a work, or on an "integral" part of the work, is sufficient. *Id.,* § 7.10[c].

■■■ The court concludes that placement of a copyright notice on the "boot-up" or sign-on screen, which immediately precedes the status screen and always appears before the user can call up the status screen, sufficiently places anyone seeking to copy the status screen on notice of the existence of a copyright covering the status screen. The "boot-up" screen, thus, is

similar to the title pages of a book. Further, the court notes that copyright notices are also placed on the pages of the user manual illustrating the status screen. The court concludes that the notice of copyright on the "boot-up" screen and on the pages of the user manual which illustrated the status screen is sufficient notice of copyright to constitute "reasonable notice of the claim of copyright," 17 U.S.C. § 401(c), and to constitute "reasonable efforts to add notice" to the status screen, 17 U.S.C. § 405(a)(2). Accordingly, the fact that the plaintiff within five years of the publication of the status screen obtained a copyright registration and displayed a notice of copyright on the "boot-up" screen and on the pages of the user manual illustrating the status screen excuses the placement of the status screen in the public domain without proper registration or notice.

That the copyright notification on the "boot-up" screen and on the user manual pages may also place someone on notice of the claimed copyrights on the computer program and the user manual does not invalidate the notice as it pertains to the status screen. All that is required is that the notice be sufficient to put anyone seeking to copy the work on notice of the plaintiff's claim of copyright. The court concludes that sufficient notice is present and that the plaintiff has not forfeited its copyright protection of the status screen.

## COPYING

■■■ Having established ownership of a copyright in the status screen, i.e., that the status screen is copyrightable subject matter and that sufficient notice of copyright is affixed to the status screen, all that remains for the plaintiff to establish in order to prove copyright infringement is the copying of the status screen by the defendants. Because copying is ordinarily impossible to prove by direct evidence, it is usually proven indirectly by evidence of a defendant's access to the copyrighted work and substantial similarity between the plaintiff's and the defendant's works. Here, the defendants acknowledge access

to the status screen prior to the development of their Mirror program.

The evidence also establishes substantial similarity between the ideas behind the two screens (the "extrinsic" test) and between the expression of the two screens (the "intrinsic" test). *Sid & Marty Krofft Television,* 562 F.2d at 1165. The Mirror status screen captures the "total concept and feel" of the Crosstalk XVI status screen. *Id.,* at 1167 (citing *Roth Greeting Cards v. United Card Co.,* 429 F.2d 1106, 1110 (9th Cir.1970)). Placement of the plaintiff's status screen side-by-side with the defendants' clearly points up the substantial similarity between the two screen displays. While there is some difference between the two screens in their arrangement of the "window" list of commands, the upper portion of two screens are virtually identical, the single exception being the insertion of the name "Mirror" in the place of the name "Crosstalk" on the top line of the screen. The court finds the evidence of the defendants' access to the plaintiff's status screen between the arrangement and design of the plaintiff's status screen and the defendants' status screen sufficient to establish copying by the defendants.

## CONCLUSION

The court finds (1) that the plaintiff owns a valid copyright protecting the arrangement and design of its Crosstalk XVI status screen, (2) that the defendants copied the plaintiff's Crosstalk XVI status screen and, therefore, (3) that the defendants infringed the plaintiff's copyright in the arrangement and design of the Crosstalk XVI status screen. Accordingly, the court hereby directs that from this day forward the defendants are permanently enjoined from engaging in, undertaking, aiding, abetting or facilitating the manufacture, distribution, lease, sale or licensing of any merchandise, goods or articles constituting infringements of the plaintiff's copyright in the Crosstalk XVI (version 3.6) "Main Menu" (status screen). This injunction is binding upon the defendants, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of this order.

The clerk is directed to schedule this case for a pretrial conference on the remaining issues.

## APPENDIX

### Exhibit A

```
┌──────── CROSSTALK—XVI Status Screen ───────┐                Off line
NAme    Crosstalk defaults                        LOaded  C:STD.XTK
NUmber                                            CApture Off

┌──────── Communications parameters ────────┐    ┌──────── Filter settings ────────┐
SPeed   1200    PArity None   DUplex  Full        DEbug   Off      LFauto   Off
DAta    8       STop   1      EMulate None         TAbex   Off      BLankex  Off
POrt    1                     MOde    Call         INfilter On      OUtfiltr On

┌──────────── Key settings ───────────┐          ┌───── SEnd control settings ─────┐
ATten   Esc            COmmand ETX (·C)            CWait   None
SWitch  Home           BReak   End                 LWait   None

┌──────────────── List of Crosstalk commands ────────────────┐
    NAme      NUmber     ANswback   APrefix     ATten    BReak      DEbug
    DPrefix   DRive      DSuffix    EDit        EMulate  EPath      FIlter
    POrt      PWord      RDials     RQest       SCreen   SNapshot   SWitch
    TImer     TUrnarnd   VIdeo      ACcept      CWait    DNames     FKeys
    GO        INfilter   LFauto     LOad        LWait    MOde       QUit
    RUn       SAve       SEnd       XDos        BKsize   BLankex    BYe
    CApture   CDir       COmmand    CStatus     DAta     DIr        DO

    More to come . . .       Press ENTER: __
```

| | | | | | | |
|---|---|---|---|---|---|---|
| DUplex | ERase | FLow | GKermit | HAndshak | HElp | KErmit |
| LIst | NO | OUtfiltr | PArity | PIcture | PMode | PRinter |
| RCve | RKermit | RXmodem | SPeed | STop | TAbex | TYpe |
| UConly | WRite | XKermit | XMit | XXmodem | | |

For more information on a command, type "help xx" where "xx" is the command name (for example, "help LO" for information on the LOad command).
If you need more general help, type "help general" or "help call".

Command?

---

Exhibit B

———— MIRROR Status Screen ————                                    Off-line

NAme    MIRROR Default Settings                    LOaded  STD.XTK
NUmber                                             CApture Off

———— Communications parameters ————        ———— Filter Settings ————
SPeed   1200    PArity None   DUplex   Full    DEbug   Off    LFauto   Off
DAta  8         STop   1      EMulate  None    TAbex   Off    BLankex  Off
POrt  1                       MOde     Call    INfilter On    OUtfiltr On

———— Key settings ————                      ———— SEnd control settings ————
ATten   Esc            COmmand ETX (`C)    CWait   None
SWitch  Home           BReak   End         LWait   None

———————— List of available MIRROR commands ————————
| | | | | | | |
|---|---|---|---|---|---|---|
| ABort | ACcept | ALarm | ANswback | APrefix | ASk | ATten |
| BAckgrnd | BKsize | BLankex | BReak | BYe | CApture | CDir |
| CLear | COmmand | CRc | CStatus | CWait | DAta_bits | DEbug |
| DIr | DNames | DO | DPrefix | DRive | DSuffix | DUplex |
| EDit | EMulate | EPath | ERase | FIlter | FKeys | FLow |
| GKermit | GO | HAndshake | HElp | IF | INfilter | JUmp |
| KErmit | LAbel | LFeed | LIst | LOad | LWait | MEssage |

More to come . . . press RETURN:

| | | | | | | |
|---|---|---|---|---|---|---|
| RDial | REply | RHayes | RKermit | RQuest | RUn | RWind |
| RXmodem | SAve | SBreak | SCreen | SEnd | SKip | SNapshot |
| SPeed | STop_bits | SWitch | TAbexpand | TImer | TUrnarnd | TYpe |
| UC_only | WAit | WHen | WRite | XBatch | XDos | XHayes |
| XKermit | XMit | XXmodem | | | | |

For HElp on a particular command, enter HE followed by the command name (e.g., HE LW for HElp on the LWait command).

Command?