INFODEK, INCORPORATED, Plaintiff,

v.

MEREDITH–WEBB PRINTING COMPANY, INCORPORATED, Defendant.

Civ. No. 1:91–cv–3238–JEC.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 6, 1993.

Stephen M. Schaetzel, Daiva Kristina Tautvydas, Jones & Askew, Atlanta, GA, for plaintiff.

George Marshall Thomas, Hopkins & Thomas, Atlanta, GA, F. Lawson Brown, Jr., Mark A. Jones, Jeffrey A. Andrews, Vernon Vernon Wooten, et al., Burlington, NC, for defendant.

## ORDER

CARNES, District Judge.

This case is presently before the Court on Plaintiff's Motion to Compel Production of Documents [35]; Defendant's Motion to Supplement its Motion for Partial Summary Judgment [49]; and Defendant's Motion for Partial Summary Judgment on Plaintiff's Copyright Infringement Claim [40]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the motion to compel should be denied, the motion to supplement should be granted, and the motion for partial summary judgment should be granted.

## BACKGROUND

Plaintiff, Infodek, Inc., creates, distributes, and sells card decks. (Compl. ¶ 5). Card decks are groups of pocket size cards that are connected at one corner and imprinted with specific information on such topics as football, car racing, and garden plants. (Id.).

In June 1990, Plaintiff contracted with an independent contractor ("Gaddis") to arrange and coordinate production of three new sets of card decks. (Gaddis Aff. ¶¶ 5–7). To facilitate the card deck manufacturing process, Gaddis allegedly developed a new method to position or arrange the individual cards on large sheets of heavy poster size paper called press sheets ("press sheet arrangements"). (Id. ¶ 10). After printing a particular press sheet arrangement, the individual cards are cut, collated, and fastened together to form a card deck. (Id. ¶ 8). To explain the press sheet arrangements and production process to the manufacturer, Gaddis wrote a set of partial instructions that use numbers to describe the individual card positions and text to describe the production specifications. (Id. ¶ 13).

In October 1991, Gaddis applied for and received a certificate of registration for the set of partial instructions under the title "Instructions for Manufacture of Infodek Card Decks" (the "Instructions") [1]. (Id. ¶ 14 & Compl. Ex. 1). The certificate lists Plaintiff as assignee of Gaddis's interest as copyright claimant.[2] (Pl.'s Resp. in Opp'n to Def.'s Mot. for Partial Summ. J. [Pl.'s Resp.] Ex. 4).

In September 1990, approximately one year before certification, Gaddis selected Defendant, Meredith–Webb Printing, Co., Inc., to produce prototypes of the three sets of card decks. (Gaddis Aff. ¶ 12). Gaddis allegedly provided Defendant with copies of the Instructions with the express understanding that they would be kept confidential and not used to produce competing products.

---

1. The Instructions are copyrightable subject matter under the Copyright Act of 1976 category for pictorial, graphic, and sculptural works (§ 102(a)(5)). 17 U.S.C. § 101 (1993 . Supp.) (" 'Pictorial, graphic, and sculptural works' include ... technical drawings").

2. Plaintiff offers evidence of the purported transfer of interest by way of two documents. The first document, entitled Assignment of Copyright, dated September 27, 1991 ("first assignment") states that Gaddis assigns to Plaintiff his "full, exclusive, and entire copyright rights in and to [the] aforesaid technical drawing, including the right to seek and hold copyright registration or registrations and comparable rights, in any and all countries throughout the world." (Pl.'s Resp. Ex. 8). The second document, entitled Assignment Nunc Pro Tunc, dated February 1, 1993 ("second assignment") states that Gaddis assigns to Plaintiff "the right to bring suit on all accrued causes of action based on the copyright in any and all countries throughout the world." (Id. Ex. 9).

(*Id.* ¶¶ 14, 16–19). Despite this alleged understanding, Plaintiff claims that Defendant used the press sheet arrangements to create its own sets of card decks sometime in March 1991. (Compl. ¶ 22).

Consequently, Plaintiff brought suit in this Court alleging that Defendant's unauthorized use of the press sheet arrangements amounts to trade secret misappropriation under Georgia law and copyright infringement under federal law. (*Id.* ¶¶ 23–29). This Court has personal jurisdiction over the parties based on Georgia's long-arm statute, GA.CODE ANN. § 9–10–91 (Michie 1993 Supp.), and subject matter jurisdiction based on diversity of citizenship,[3] federal question, and supplemental jurisdiction. 28 U.S.C. §§ 1331, 1332, 1338(a), & 1367 (1993 Supp.).

## DISCUSSION

### A. *Plaintiff's Motion to Compel Production of Documents*

On October 9, 1992, Defendant filed an objection to question twenty of Plaintiff's second interrogatory request ("question twenty") that asked Defendant to identify all customers covered by its "policy of treating all information as confidential until it is published and sent out." (Mem. in Supp. of Pl.'s Mot. to Compel Produc. of Docs. at 1–2). On November 6, 1992, Plaintiff requested supplementation of Defendant's responses to its earlier interrogatory requests. (*Id.* at 1). Defendant apparently did not respond to question twenty by the close of discovery on December 8, 1992, even though its supplementation response was due by December 7, 1992. (*Id.*). Consequently, on December 16, 1992, Plaintiff moved to compel production of Defendant's customer lists pursuant to Rule 37 of the Federal Rules of Civil Procedure. (Pl.'s Mot. to Compel Produc. of Docs.).

Because discovery was closed at the time of filing, Defendant argues that Plaintiff's motion to compel should be denied as untimely pursuant to Local Rule 225–4(d). (Def.'s Resp. to Pl.'s Mot. to Compel Produc.

of Docs. at 1). Local Rule 225–4(d) provides that the time for filing motions to compel discovery is "within the time remaining prior to the close of discovery or, if longer, within 10 days after service of the discovery responses upon which the objection is based." Although Plaintiff clearly did not file its motion to compel prior to the close of discovery, it argues that the motion is timely because it was filed within ten days of service of Defendant's response for supplementation of question twenty, the response upon which the objection is based. (Reply to Def.'s Resp. to Pl.'s Mot. to Compel Produc. of Docs. at 2). Moreover, Plaintiff claims it did not file its motion to compel at the time of the Defendant's initial objection because it made a good faith effort to resolve the dispute without this Court's assistance pursuant to Local Rule 225–(a). (*Id.*).

 Although Local Rule 225–4(a) states that the parties shall make a good faith effort to resolve discovery disputes among themselves, the Court concludes that the fact the parties allegedly made a good faith effort to resolve the dispute does not excuse an otherwise untimely motion to compel. Additionally, the Court concludes that the time for filing a motion to compel does not restart when a party's supplementation response is merely an affirmation of an earlier discovery response. Such a maneuver would unduly delay closure of discovery and violate the spirit of Local Rule 225–4(d). Accordingly, Plaintiff's motion to compel production of documents is denied as untimely.

### B. *Defendant's Motion for Partial Summary Judgment*

 Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). A fact's materiality is determined by

---

**3.** Plaintiff is incorporated in Georgia and its principle place of business is in Georgia. (Compl. ¶ 1). Defendant is incorporated in North Carolina and its principle place of business is in North Carolina. (*Id.*). The amount in

controversy exceeds $50,000, exclusive of interest and costs. (*Id.* at ¶ 4). Because the parties appear to have complete diversity, this Court's subject matter jurisdiction is proper regardless of the final disposition of the copyright claim.

the controlling substantive law, and an issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Anderson · v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Initially, the moving party bears the burden of informing the court of its basis for summary judgment, although its burden may be discharged by pointing out to the court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the movant's burden is met, however, the non-moving party is required to "go beyond the pleading" and produce competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. Thus, the party opposing summary judgment must come forward with specific evidence as to every essential element on which it will bear the burden of proof at trial to show that there is a genuine issue of material fact.

### 1. *Standing*

■ As a preliminary matter, Defendant claims that summary judgment is appropriate because Plaintiff does not have standing to sue as the date of the alleged infringement (March 1991) precedes the date of the first assignment of interest (September 27, 1991). Standing to sue is material to Plaintiff's claim because Article III of the Constitution requires a litigant to have "standing" to invoke the power of a federal court. *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of the particular issues."

*Id.* at 750–51, 104 S.Ct. at 3324. However, "[t]he standing doctrine, which 'has been very much tied to litigation asserting the illegality of governmental action,' is of limited applicability in cases between private parties. Claims of private wrongdoing ordinarily are asserted by persons obviously having the enforceable interest, if anyone has; such problems as arise commonly are handled in terms of defining private causes of action or of identifying the real party in interest." *Glickstein v. Sun Bank/Miami, N.A.,* 922 F.2d 666, 670 (11th Cir.1991) (citing 13 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE & PROCEDURE § 1351, at 340–41 (2d ed. 1984)).

■ Because Plaintiff alleges a personal injury fairly traceable to Defendant's conduct and likely to be redressed by the requested relief, *Allen,* 468 U.S. at 751, 104 S.Ct. at 3324, it has established standing to sue. Nevertheless, Defendant disputes whether Plaintiff possesses the interest sought to be enforced, (Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Partial Summ. J. [Def.'s Reply] at 18–19), which is actually a question of Plaintiff's status as the real party in interest to the copyright infringement claim. Rule 17(a) of the Federal Rules of Civil Procedure requires that "every action shall be prosecuted in the name of the real party in interest." FED.R.CIV.P. 17(a). Thus, this Court is faced with the issue of whether the action is brought by the person who, by' the controlling substantive law, has the right sought to be enforced. *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.,* 630 F.2d 250, 256–57 (5th Cir.1980) [4].

Copyright infringement is controlled by the federal copyright law, which provides that "[t]he legal or beneficial .owner of an exclusive right under a copyright is entitled,[5]

---

4. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit Court of Appeals handed down prior to the close of business on September 30, 1981.

5. 17 U.S.C. § 106 (1993 Supp.) codifies the various rights a copyright holder possesses: "[T]he owner of a copyright under this title has the exclusive rights to do and authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare deriva-

tive works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; and (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audio-

subject to the requirements of section 411,[6] to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b) (1993 Supp.). "Ownership of a copyright may be transferred in whole or in part by any means of conveyance," and "[t]he owner of any particular exclusive right is entitled, to the extent of that right, to all the protection and remedies accorded to the copyright owner." 17 U.S.C. § 201(d)(1)–(2) (1977). However, "a mere assignment of a copyright does not of itself transfer to the assignee any cause of action for infringements that occurred prior to the assignment. Unless the assignment of copyright contains language explicitly transferring causes of action for prior infringements, the assignee cannot maintain a suit for infringements [that] happened before the effective date of the assignment." *Prather v. Neva Paperbacks, Inc.*, 410 F.2d 698, 700 (5th Cir.1969).

In effect, Defendant asserts that Plaintiff is not a real party in interest because it did not own an interest in the copyright at the time of the alleged infringement, nor did Plaintiff explicitly obtain the right to sue for past infringements by the first assignment. (Def.'s Reply at 19). Plaintiff argues, however, that the intent of both parties to the first assignment was to transfer any and all accrued causes of action in and to the copyrighted work to Plaintiff. (Gaddis Aff. ¶ 21). Although all evidence submitted to the court must be construed in the light most favorable to the non-movant, *Easterwood v. CSX Transportation, Inc.*, 933 F.2d 1548 (11th Cir.1991), Plaintiff's affidavit evidence fails to establish that the parties to the first assignment explicitly transferred the right to accrued damages. Indeed, the first assignment is completely silent as to who possesses the right to past infringements, (Def.'s Reply Ex. C), and the case law clearly states that a transfer of interest for accrued damages must be stated in no uncertain terms. *Prather*, 410 F.2d at 700. It follows

that the transfer of interest to past infringements did not pass from Gaddis to Plaintiff in the first assignment despite the alleged intent to transfer any and all accrued damages.

Explicit language of a transfer of a right to past infringements is necessary because of the threat of multiple litigation for the same alleged infringement. In the present case, however, the threat of multiple litigation is effectively cured by the second assignment, which assigns to Plaintiff "the right to bring suit on all accrued causes of action based on the copyright in any and all countries throughout the world." (Pl.'s Resp. Ex. 9). Despite the explicit language of transfer in the second assignment, Defendant argues that Plaintiff is not a real party in interest because it obtained its interest more than one year after filing the present claim. (Def.'s Reply at 20).

Rule 17(a) of the Federal Rules of Civil Procedure does not address the issue of whether one can maintain a suit brought before an assignment of the right sought to be enforced. Even though the Eleventh Circuit apparently has not ruled on this issue, other circuits have held that even when the claim is not assigned until after the action is instituted, the assignee is the real party in interest and can maintain the action. *Kilbourn v. Western Surety Co.*, 187 F.2d 567 (10th Cir.1951); *Dubuque Stone Prods. Co. v. Fred L. Gray Co.*, 356 F.2d 718, 724 (8th Cir.1966); *Campus Sweater & Sportswear Co. v. M.B. Kahn Constr. Co.*, 515 F.Supp. 64, 84 (D.S.C.1979). The reasoning in these cases is sound and the Court concludes that an assignment of interest should be recognized provided the assignment occurs before trial, the plaintiff is a real party in interest in at least one other claim, and the defendant suffers no prejudice from its recognition. *Dubuque Stone Prods. Co.*, 356 F.2d at 724.

In the present case, the second assignment occurred before trial and Plaintiff is presum-

---

visual work, to display the copyrighted work publicly."

**6.** Section 411(a) of the Copyright Act of 1976 requires registration of the copyright as a jurisdictional prerequisite to an infringement suit.

17 U.S.C. § 411(a) (1993 Supp.). However, failure to register a work prior to filing suit is not fatal to the copyright holder's substantive interest. *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1488 (11th Cir.1990).

ably a real party in interest to the trade secret misappropriation claim. Moreover, Defendant is not prejudiced by recognition of the second assignment because Plaintiff now possesses "the right to bring suit on all accrued causes of action based on the copyright in any and all countries throughout the world." (Pl.'s Resp. Ex. 9). This right would permit Plaintiff to file a separate action for past infringements, and then move to consolidate the two actions pursuant to Rule 42 of the Federal Rules of Civil Procedure. FED.R.CIV.P. 42(a). Thus, in the interest of judicial economy and because the threat of multiple litigation is effectively removed, the Court concludes the second assignment should be recognized and Plaintiff should be permitted to maintain the copyright infringement claim as a real party in interest.

### 2. *Copyright Infringement*

Additionally, Defendant claims summary judgment is appropriate for the copyright infringement claim because Plaintiff has failed to establish a genuine issue of material fact for trial. (Mem. in Supp. of Def.'s Mot. for Partial Summ. J. [Def.'s Mem.] at 1).

■ To establish copyright infringement, a plaintiff must prove two essential elements: (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Service Co.,* 499 U.S. 340, ——, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991). Defendant argues that Plaintiff's evidence fails to sufficiently establish both material elements on which Plaintiff will bear the burden of proof at trial for its copyright infringement claim. (Def.'s Mem. at 1, 5).

### a. *Ownership of a Valid Copyright*

■ To qualify for copyright protection, the work must be (1) copyrightable subject matter that is (2) original to the author and (3) fixed in a tangible medium of expression. *Feist Publications, Inc.,* 499 U.S. at ——, 111 S.Ct. at 1287. An initial determination of copyrightability is made by

the Register of Copyrights before issuance of a certificate of registration. 17 U.S.C. § 410(a) (1977). Provided registration is made within five years of the first publication of the work,[7] a certificate of registration constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate" in any judicial proceeding. *Id.* § 410(c). The presumption of validity includes the requirements of originality and susceptibility to copyright. *Donald Frederick Evans & Assoc., Inc. v. Continental Homes, Inc.,* 785 F.2d 897, 903 (11th Cir. 1986). The presumption, however, is rebuttable. *Id.* at 903. "The evidentiary weight to be accorded the certificate of a registration ... [is] within the discretion of the court." 17 U.S.C. § 410(c) (1977). Nevertheless, the burden of proof shifts to the defendant to rebut the presumption of copyrightability. *Donald Frederick Evans & Assoc., Inc.,* 785 F.2d at 903.

Plaintiff's copyright is presumptively valid because the Instructions are unpublished and Plaintiff submitted evidence of the certificate of registration to this Court. (Pl.'s Resp. Ex. 4). Defendant argues, however, that the presumption of validity is rebutted because the work is (1) an uncopyrightable idea, (2) not original to the author, (3) not copyrightable because of the merger doctrine, and (4) not copyrightable because of the useful article exception. (Def.'s Mem. at 6–11).

### 1). *Idea–Expression Dichotomy*

■ The idea-expression dichotomy states that the expression of an idea is copyrightable, but the underlying idea is not. *Mazer v. Stein,* 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954). This fundamental axiom of copyright law satisfies the First Amendment right to the unimpeded access to information, *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 390, 89 S.Ct. 1794, 1806, 23 L.Ed.2d 371 (1969), as well as the promotion of public knowledge, the primary constitutional objective for copyright protection,[8] because public knowledge de-

---

7. "'Publication' is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 101 (1993 Supp.).

8. The Intellectual Property Clause of the Constitution states that: "The Congress shall have Power ... To Promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to

pends upon the free flow of ideas. *Feist Publications, Inc.*, 499 U.S. at ——, 111 S.Ct. at 1290. In this way, the *quid pro quo* of copyright protection is satisfied as the public gains the benefit of the use of the idea, and the author gains the statutory right to exploit the idea's expression for a limited time. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429, 104 S.Ct. 774, 782, 78 L.Ed.2d 574 (1984) (Congress is assigned the task of balancing the scope of the author's limited monopoly with society's competing interest in the free flow of ideas and information).

 Ideas are protected by patents. *Mazer*, 347 U.S. at 217, 74 S.Ct. at 470. Patent law imposes much stricter standards and provides protection for much shorter durations than copyright law. Thus, copyright protection of ideas would invade the province of patents without the same protective limitations of the patent laws. To guard against this danger, the Copyright Act of 1976 states that "in no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, *method of operation*, concept, principle or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b) (1993 Supp.) (emphasis added). Hence, the subject matter protected by Plaintiff's copyright is the original elements of expression that depict the press sheet arrangement methods in the Instructions, not the press sheet arrangement methods. In other words, absent a patent, one is prohibited only from copying the original elements of expression in the Instructions, not from using the Instructions to reproduce the press sheet arrangement methods depicted.

### 2). *Originality*

 Plaintiff's copyright is valid, nevertheless, only to the extent that it protects

against the unauthorized use of the original elements of expression because one cannot obtain copyright protection of the non-original elements of a work of authorship. *Feist Publications, Inc.*, 499 U.S. at ——, 111 S.Ct. at 1290. Indeed, "[o]riginality is a constitutional requirement." *Id.* 499 U.S. at ——, 111 S.Ct. at 1288. Originality, however, "means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Id.* 499 U.S. at ——, 111 S.Ct. at 1287 (citing N. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT § 1.08[C][1] ). However, even though the standard of originality is low, the author must still prove "the existence of . . . intellectual production, of thought, and conception." *Burrow–Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 59–60, 4 S.Ct. 279, 281–82, 28 L.Ed. 349 (1884).

 Because Plaintiff provided sufficient evidence that the Instructions were independently created by Gaddis, (Gaddis Aff. ¶ 13), the question remains as to whether the Instructions possess a spark of creativity attributable to their author. To rebut the presumption of originality, Defendant points to Plaintiff's patent application, which states that the press sheet arrangement methods are "prior art."[9] This argument is unconvincing as the standards for novelty in patents are much more stringent than the standards for originality in copyrights, and therefore not comparable. For instance, two identical but independently created works will satisfy copyright's originality requirement, but not patent's novelty requirement. *Feist*

---

their respective Writings and Discoveries." U.S. CONST. art. I, § 8, cl. 8. The Intellectual Property Clause employs a parallel structure that both grants and limits copyrights and patent rights. Thus, the use of the term "science" relates to copyrights and is generally given its eighteenth century meaning of knowledge or learning. *Graham v. John Deere Co.*, 383 U.S. 1, 5, 86 S.Ct.

684, 687, 15 L.Ed.2d 545 (1966) (useful arts and discoveries refer to inventors and patents).

**9.** Prior art is defined as "any relevant knowledge, acts, descriptions, and patents which pertain to, but predate, invention in question." BLACK'S LAW DICTIONARY 1193 (6th ed. 1990).

*Publications, Inc.,* 499 U.S. at —— – ——, 111 S.Ct. at 1287–88.

■ Moreover, Defendant's argument attacks the press sheet arrangement methods, not the expression used to depict the press sheet arrangement methods. In other words, even if a particular press sheet arrangement method is not original to the author, its depiction in a tangible medium of expression is considered original to the author provided the depiction contains a spark of creativity attributable to its author. Because Defendant has not presented sufficient evidence to rebut the presumption of originality as to Plaintiff's particular expression of the press sheet arrangement methods, the Court must presume that the Instructions contain a spark of creativity.

### 3). *Merger Doctrine*

■ Defendant also argues that the press sheet arrangement methods and their expression are inseparable, and thus not copyrightable because of the merger doctrine. (Def.'s Reply at 8). The merger doctrine denies copyright protection when an idea and its expression are so closely connected that there is only one way to express the idea. *Digital Communications Assoc., Inc. v. Softklone Distributing Corp.,* 659 F.Supp. 449, 457–58 (N.D.Ga.1987) (O'Kelley, J.). Thus, the policy against copyright protection of ideas overrides the policy of copyright protection for original expression. "If there exists only one expression for an idea, then granting copyright protection with its attendant ease of obtainment and long duration ... would unduly prevent use of the idea by society." *Digital Communications Assoc., Inc.,* 659 F.Supp. at 458.

■ The usual problem with applying the merger doctrine test is in defining the underlying idea. *Id.* This problem, however, is simplified with a utilitarian work, such as a technical drawing, because the idea is defined by a useful article's purpose or function. *Id.* Thus, to determine whether a useful article's idea and expression merge, the court must determine (1) the purpose or function of the article, and (2) whether there are various means available to achieve the article's desired purpose or function. *Id.*

■ Because the purpose or function of a press sheet arrangement instruction is to describe the positions of the individual cards, the dispositive issue is whether a particular press sheet arrangement is capable of being expressed in various different ways. The Court concludes that the press sheet arrangement information is expressible in more than one way because the individual card positions and specifications may be described in several different ways and mediums of expression. For instance, an author may inform the reader of the desired press sheet arrangement methods by various representations, illustrations, and levels of detail in technical drawings, sketches, diagrams, charts, models, textual instructions, and photographs. Thus, because the press sheet arrangement methods can be expressed in more than one way, the idea of a particular press sheet arrangement is not inseparable from its expression and there is no merger.

### 4). *Useful Article Exception*

■ Lastly, Defendant argues that Plaintiff's copyright should not be recognized because the Instructions are functional articles with no separable artistic aspects and therefore the useful article exception to copyright denies them protection. (Def.'s Reply at 7). Defendant is correct in that the Instructions are useful articles and that copyright denies protection for works that have "an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101 (1993 Supp.). Defendant's argument is without merit, however, because the intrinsic function of a technical drawing is to convey information, and, by definition, a useful article that conveys information is not subject to the useful article exception. *Eales v. Environmental Lifestyles, Inc.,* 958 F.2d 876, 879–80 (9th. Cir.1992). Thus, Plaintiff's copyright remains presumptively valid.

### b. *Copying*

■ Despite the presumed validity of its copyright, in order to avoid summary judgment Plaintiff must present sufficient evidence that establishes a jury question as to

Defendant's unauthorized copying of original elements of Plaintiff's work. Copying may be proved by direct or circumstantial evidence. *Donald Frederick Evans Assoc., Inc.,* 785 F.2d at 904. A presumption of copying is established from circumstantial evidence that shows (1) the defendant had access to the copyrighted work, and (2) the two works are substantially similar. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 829 (11th Cir.1982). A defendant may rebut the presumption of copying by presenting evidence of independent creation. *Id.*

Plaintiff has not submitted sufficient evidence to establish direct copying. However, Plaintiff has presented affidavit evidence that Defendant had access to the work as Defendant was supplied with copies of the Instructions to produce the three sets of card deck prototypes. (Gaddis Aff. ¶¶ 14, 18–19). Because Defendant has not contested receipt of the Instructions, summary judgment in the present case is appropriate only if the court finds, as a matter of law, that the works are not substantially similar.

■ Substantial similarity is usually a question of fact. *Donald Frederick Evans Assoc., Inc.,* 785 F.2d at 904. A court may determine as a matter of law, however, that two works are not substantially similar "either because the similarity between the two works is of non-copyrightable elements or because no reasonable jury, properly instructed, would find that the two works are substantially similar." *Beal v. Paramount Pictures,* 806 F.Supp. 963, 967 (N.D.Ga.1992) (Carnes, J.). Non-copyrightable elements include material traceable to common sources, the public domain, or custom, as well as *scenes a faire,*[10] ideas, facts, cliches, or metaphors. In short, non-copyrightable elements are those elements not original to the author. Thus, it follows that summary judgment is appropriate only if the court finds that there are no original elements of Plaintiff's work incorporated in Defendant's work or that the two works are so dissimilar that no reasonable jury would find them substantially similar.

■ Because Defendant's work is essentially combinations of numbers, any similarity between the two works will be found through a comparison of the sequences of numbers used in the two works. Similar to letters and other symbolic characters, individual numbers and sets of numbers by themselves are not copyrightable. H.R.Rep. 1476, 94th Cong., 2d Sess. 55 (1976) *reprinted in* U.S.C.C.A.N. 5668–9. However, when numbers are combined in sequences to express ideas or information, any original expression that results from the use of the numerical sequences is copyrightable in the same way that original expression may result when letters are combined in sequences to form words that express ideas or information. Thus, any copyrightable elements in the two works will be found in the expression of the particular number sequences that express the desired press sheet arrangement. Of course for a particular numerical sequence to be copyrightable expression, the Court must find it to be original to the author.

■ After carefully reviewing the various sequences of numbers in the two works, the Court concludes that there is no degree of similarity between the Defendant's work and the original expression in Plaintiff's work. Comparing the horizontal number sequences of the first form of both works, Plaintiff's work reads: one, forty-nine, nine, fifty-seven, seventeen, five, fifty-one, eleven, fifty-nine, nine, and sixty-seven. (Def.'s Resp. Ex. 2). Defendant's work, on the other hand, reads: one, one, one, forty-nine, forty-nine, forty-nine, two, two, two, fifty, fifty, and fifty. (*Id.* Ex. 6). There is no similarity between the original expression in Plaintiff's work and Defendant's work as the only two number combinations similar to both works, one and forty-nine, are in different positions within their respective number sequences. The number sequences are not similar expressions of the same idea even if the idea expressed in both sets of instructions is the same. A vertical reading of the number sequences produces the same results. Thus, any similarity that may exist between the

---

**10.** *Scenes a faire* are incidents or plot that ordinarily result from a common theme or setting. 3

M. Nimmer & D. Nimmer, Nimmer on Copyright, § 13.03[B][4], 13–69 (1992).

two works is of non-copyrightable elements as Plaintiff's original expression is not copied in Defendant's work.

### CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel Production of Documents [35] is **DENIED,** Defendant's Motion to Supplement its Motion for Partial Summary Judgment [49] is **GRANTED,** and Defendant's Motion for Partial Summary Judgment [40] is **GRANTED.**

SO ORDERED.