The CADLE COMPANY, Appellant,

v.

John HENDERSON, Jr., Appellee.

No. 04–98–00144–CV.

Court of Appeals of Texas,
San Antonio.

Oct. 28, 1998.

G. Wade Caldwell, Dain A. Dreyer, Martin, Drought & Torres, Inc., San Antonio, for Appellant.

S. Preston Douglass, Jr., Wallace, Jackson, Machann, Williams & Douglass, PC, Kerrville, for Appellee.

Before HARDBERGER, C.J., and RICKHOFF and STONE, JJ.

## OPINION

STONE, Justice.

This is an appeal from a summary judgment. Appellant, The Cadle Company (Cadle), argues that the trial court erred in granting summary judgment in favor of Appellee, Henderson, on his affirmative defense that the claim against him was barred by the statute of limitations. For the reasons stated herein, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

In 1989, Henderson executed a promissory note and security agreement, payable to NBC Bank Kerrville. The Federal Deposit Insurance Corporation (FDIC) acquired the note, as receiver of the bank. In 1991, the note was purchased from the FDIC by National Loan Investors, L.P (NLI). In 1992, Cadle purchased the note. The loan sale agreement defined the loan(s) the subject of the agreement, and contained the following limiting language: "... but not including any rights, causes of action or defenses peculiar to the Federal Deposit Insurance Corporation, or the Receiver of the Former Bank, under any statute or rule of law."

In 1993, when the note matured, Cadle made a written demand for payment, and Henderson refused to pay. Cadle sued in February 1997 for the installments that came due within six years of filing suit, relying on the federal statute of limitations governing FDIC claims. Realizing that the above language in the original assignment, coupled with a case from the Dallas Court of Appeals, might limit the claim to the state four-year statute of limitations, Cadle and NLI executed an amendment to their agreement that assigned to Cadle the right to use the FDIC's six-year statute of limitations. The amendment was executed after suit was filed, but before trial began. However, the state statute of limitations had already run at the time of the amendment.

Henderson filed a motion for summary judgment, based, in part, on the statute of limitations. The trial court granted that motion solely on the basis of limitations, and Cadle appeals, alleging that (1) the trial court erred in granting summary judgment on the

affirmative defense, and (2) the trial court erred in applying the four-year statute of limitations rather than the six-year statute.

## STANDARD OF REVIEW

The movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). In reviewing a summary judgment, evidence favorable to the non-movant will be taken as true, and every reasonable inference will be indulged in favor of the non-movant. *Id.*

 When a defendant moves for summary judgment based on an affirmative defense, the defendant must prove conclusively all elements of that defense as a matter of law. *Morriss v. Enron Oil & Gas Co.*, 948 S.W.2d 858, 867 (Tex.App.—San Antonio 1997, no writ). When that defense is the statute of limitations, the defendant must conclusively establish that the action has accrued and is barred. *Id.* In response, the non-movant must expressly present to the trial court those issues that would defeat the summary judgment motion and, failing to do so, may not raise them later on appeal. *Id.;* see also *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex.1979).

## THE FEDERAL LIMITATIONS STATUTE

The Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) allows the FDIC six years from the accrual of a claim to recover on a note it obtains as a conservator or a receiver. *See* 12 U.S.C.A. § 1821(d)(14). The Texas statute governing suits on notes allows four years to file such claims. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.004 (Vernon 1986). In 1994, the Texas Supreme Court held that when the FDIC assigns a note to a private party, it also assigns the six-year limitations period. *Jackson v. Thweatt*, 883 S.W.2d 171, 177–78 (Tex.), *cert. denied*, 513 U.S. 872, 115 S.Ct. 196, 130 L.Ed.2d 127 (1994). In *Thweatt*, the

court reasoned that, although § 1821 does not expressly state that its six-year period applies to FDIC assignees, under the common law assignees stand in the shoes of their assignors. *Thweatt*, 883 S.W.2d at 174. Refusing to allow the limitations period to transfer with the note, the court stated, would thwart the policy reasons behind the enactment of the FIRREA. *Id.* Further, the court held that the six-year limitations period applied, even though the claim was brought after the state limitations period had expired. *Id.* at 177. This is so because, in *Thweatt*, the claim against the defendant was not stale, under the six-year period, when the FDIC was appointed receiver—even though FIRREA had not been passed at that time, an analogous federal statute existed. *Id.* Thus, when FIRREA was passed, it applied retroactively to the FDIC, which then conveyed its rights through assignment. *Id.* at 178.

*Thweatt* speaks of both "transferable" assignment rights and rights that seem to pass automatically. *See id.* at 176 (stating that FIRREA creates a right *transferable* to subsequent purchasers, but also concluding flatly that "the limitations period of 12 U.S.C. § 1821(d)(14) applies to actions brought by purchasers of assets from the FDIC"). Implicitly, then, *Thweatt* stands for the proposition that, at least in the absence of explicit language stating otherwise, the benefits of the six-year limitations period automatically pass from the FDIC to its assignees.

A case from the Dallas Court of Appeals addresses what happens if there is explicit language stating otherwise. *See Cadle Co. v. Estate of Weaver*, 897 S.W.2d 814 (Tex. App.—Dallas 1994, writ denied), *cert. denied*, 514 U.S. 1128, 115 S.Ct. 2002, 131 L.Ed.2d 1003 (1995). In *Weaver*, the court affirmed the trial court's summary judgment for the defendant in a similar case on the basis of the statute of limitations, where the assignment agreement between the FDIC and Cadle Company expressly prohibited Cadle from asserting a legal argument available to the FDIC as liquidator or receiver.[1] *Weaver*, 897 S.W.2d at 818.

1. The contract stated:
 Buyer acknowledges that it does not have the right to, and further warrants, represents and

agrees that it will not in any event raise or pursue any special legal argument or position available to the FDIC as a result of its activities

This case presents a new twist on the *Thweatt/Weaver* facts: in a case where the original assignment expressly did not convey the benefits of the expanded statute of limitations, what happens if the assignor and assignee execute an amendment after the assignee has filed suit *and* after the state statute of limitations has run? According to Cadle, the amendment to the contract is dispositive and renders *Weaver* irrelevant. According to Henderson, the amendment has no force because it was filed after the state statute had expired. We believe Henderson has the better argument.

## THE EFFECT OF AMENDED ASSIGNMENTS

■ As Cadle points out, assignments are governed by contract law. *See University of Texas Medical Branch at Galveston v. Allan*, 777 S.W.2d 450, 453 (Tex.App.—Houston [14th Dist.] 1989, no writ). Contracts, of course, may be amended. *See Mid Plains Reeves, Inc. v. Farmland Indus., Inc.*, 768 S.W.2d 318, 321 (Tex.App.—El Paso 1989, writ denied). A modified agreement takes the place of the original. *Martin v. Davis Constructors, Inc.*, 552 S.W.2d 873, 877 n. 4 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.).

■ Cadle also correctly observes that other jurisdictions have validated amendments to assignments, even if those amendments occur after suit has been filed. *See Intimo, Inc. v. Briefly Stated, Inc.*, 948 F.Supp. 315 (S.D.N.Y.1996); *Infodek, Inc. v. Meredith–Webb Printing Co.*, 830 F.Supp. 614 (N.D.Ga.1993). Both cases cited by Cadle involve amended assignments that allowed the assignee to sue for copyright infringement that occurred prior *to* the date of assignment. In *Infodek,* the Georgia court held that a modification to an assignment could cure a defect in the original, even after suit had been filed if (1) the assignment occurs before trial; (2) the plaintiff is the real party in interest in at least one other claim; and (3) the defendant suffers no prejudice from its recognition. *Infodek,* 830

F.Supp. at 620. The first two requisites are not at issue here; but the third is.

In *Intimo,* the court found no prejudice to the defendant where the assignor and assignee filed an amendment to their agreement clarifying that the original intent of that agreement had been that the assignee could bring suit based on claims that accrued prior to the assignment. *Intimo,* 948 F.Supp. at 318–19. No prejudice existed, the court stated, because, were the suit to be dismissed, the plaintiff could simply file another suit, based on the amendment. *Id.* at 319. This is so because the requested dismissal was based on the plaintiff's standing to sue, and the amendment could and did confer such standing.

■ Cadle seems to be arguing that it, too, could simply refile suit, based on the amendment, should summary judgment be granted. We do not believe this is so. The original assignment expressly precluded Cadle from receiving the benefits of the more generous statute of limitations. The modification did not *clarify* that agreement; it changed it. Once the state statute ran, under the terms of the agreement, suit was forever barred. *See Weaver,* 897 S.W.2d at 818. In analogous cases, the supreme court has held that an amended statute or rule that could save a claim from a statute of limitations bar may not be used to do so when the limitations period has run. *See Cathey v. Weaver,* 111 Tex. 515, 242 S.W. 447, 453 (1922); *Continental Southern Lines, Inc. v. Hilland,* 528 S.W.2d 828, 830 (Tex.1975). When the limitations period has run, rights have become "vested and perfect," and even the Legislature cannot remedy or lengthen the limitations period. *Mann v. Jack Roach Bissonnet, Inc.,* 623 S.W.2d 716, 719 (Tex. Civ.App.—Houston [1st Dist.] 1981, no writ). This is why even *Thweatt* cannot save the claim. In *Thweatt,* the supreme court held that the plaintiff could rely on the six-year period, even though the state statute had run when suit was filed. *Thweatt,* 883 S.W.2d at 177. But this was so only because the FDIC had possessed the benefits of the six-year

as liquidator or receiver of failed banks, whether such argument is based on 12 U.S.C. 1823(e) or case law.

*Weaver,* 897 S.W.2d at 817.

period at assignment *and* it did not expressly refuse to transfer those benefits. In this case, while the FDIC could have transferred the benefits, it refused to do so. Thus, Cadle could only rely on the state four-year statute until the date on which that statute ran. The six-year statute did not belong to Cadle until rights in Henderson had become "vested and perfect."

There is further support for this reasoning. The Texas Civil Practices and Remedies Code provides that the only way to revive a claim barred by the statute of limitations is by an acknowledgment, in writing, *signed by the debtor*, that the claim is just. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.065 (Vernon 1997); *see also House of Falcon, Inc. v. Gonzalez,* 583 S.W.2d 902, 905 (Tex.Civ. App.—Corpus Christi 1979, no writ). This provision supports the idea that reopening a claim that has been barred by limitations prejudices a defendant. It so prejudices the defendant, in fact, that a written acknowledgment by the defendant is required to do so.

Based on the cited authorities, we hold that the assignment, made after the four-year state statute of limitations had run, had no effect.

### THE TRIAL COURT'S CONSTRUCTION OF THE CONTRACT LANGUAGE

■ For the first time on appeal, Cadle argues that the original contract does not expressly refuse to transfer the benefits of the six-year statute of limitations, after all. Relying on commonly understood definitions of the comma and semicolon, Cadle contends that the disputed language merely limits a narrow and irrelevant portion of the assignment.[2] Because Cadle did not raise this objection at the summary judgment stage

and because, more importantly, Cadle and the FDIC have admitted in several papers filed as evidence with the trial court that the FDIC did explicitly refuse to transfer its benefits under the six-year statute, we reject Cadle's claim.

Issues not presented to the trial court shall not be considered as grounds for reversal. TEX.R. CIV. P. 166a(c); *Clear Creek Basin Auth.,* 589 S.W.2d at 676; *Morriss,* 948 S.W.2d at 867. Cadle makes two arguments as to why this rule is not applicable here. First, Cadle argues that it would have been futile to argue that the language had been misconstrued at the trial court because that court was "bound to follow *Weaver.*" This court is not so bound, Cadle contends, because *Weaver* is distinguishable from this case. Why the trial court was bound to follow case law that is distinguishable from the case before it is left unexplained.

Second, Cadle argues that the legal sufficiency of summary judgment proof may be attacked for the first time on appeal. However, Cadle misreads the law it cites to this court. In *City of Houston v. Clear Creek Basin Auth.,* cited by Cadle in support of its proposition, the supreme court stated that a non-movant need not provide an answer or response to a summary judgment motion in order to preserve error on those grounds "expressly presented to the trial court by the movant's motion." *Clear Creek Basin Auth.,* 589 S.W.2d at 678. However, the court continued, the non-movant may not raise other issues not expressly presented in the motion. *Id.* The only exception to this rule is an attack on the legal sufficiency of the *grounds expressly raised* by the movant. *Id.* Cadle has not attacked the legal sufficiency of the grounds raised by Henderson; Cadle has

---

2. The disputed language is in 1.9 of the loan agreement, which defines "loan." After listing several elements of the definition each element set off by semicolons, the provision states:

> (e) the proprietary interest of Seller in any Note, or the collateral therefore, forming the subject matter of any litigation or bankruptcy proceeding to which Seller or the Former Bank is or becomes a party, *but not including any rights, causes of action or defenses peculiar to the Federal Deposit Insurance Corporation, or the Receiver of the Former Bank, under any statute or rule of law.*

Cadle argues that the restrictive clause, following the comma, applies only to the phrase "the proprietary interest of Seller ..." and not the word "Loan." Thus, the language only applies to acquired notes in litigation in which the FDIC or the failed bank is or becomes a party. The argument has been waived.

The FDIC agreement, which according to the subsequent waiver of a portion of that agreement, apparently prohibited the use of the six-year statute, is not included in the record.

raised a completely new issue, an issue that Henderson had every right to believe had been admitted by Cadle. Moreover, in light of the inconsistencies between Cadle's new argument and the language in the amendments that outright admits the contrary, it would be impossible to decide, as a matter of law, that the contract unambiguously does not reserve to the FDIC the benefits of the six-year limitations period. If the amendment is to be considered an addition to the contract, an internally inconsistent document results. If it is to replace the original agreement, then it admits the opposite of Cadle's argument. In the latter case, Cadle has beaten itself, and summary judgment was proper; in the former, Cadle has raised no more than a fact issue. If the argument does nothing more than raise a fact issue, than it must have been raised at the trial court level. *Clear Creek Basin Auth.*, 589 S.W.2d at 678.

While it is possible to believe that the parties executed the amendments as a precautionary measure, just "in case" the contract expressly reserved the benefits of the six-year statute, the language of the amendments belies this assumption. In the amendment to the loan sale agreement, the parties state, "Whereas paragraph 1.9 of the Agreement prevents *Cadle from utilizing the six year limitations available to the FDIC and RTC with respect to the loans covered by the agreement.*" (emphasis added). The Waiver of Prohibition Against Use of Special Defenses provides, "Whereas, provision 30 of the FDIC Agreement prevents *Cadle from raising any special argument available to the FDIC.*" (emphasis added). Cadle's complaint that the trial court misconstrued the contract language is overruled.

### FAILURE OF CONSIDERATION

In its final point, Cadle argues that Henderson should not have been allowed to assert failure of consideration as an affirmative defense, because assignments may be made absent consideration. Since the summary judgment is affirmed on the basis of the statute of limitations, we need not address this argument. *See* TEX.R.APP. P. 47.1.

### CONCLUSION

This is an issue of first impression in Texas. However, to accept Cadle's argument could result in the employment of unfair trial tactics: assignees who had failed to secure all the rights entitled to the FDIC in their original agreements would essentially be given another bite at the apple, even after the time for their first bite had expired. This is not what the record or the law permits.

The judgment of the trial court is affirmed.